UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------X

EMMY HAN HSIEH,

        *Plaintiff*,

  -against-

COMMISSIONER OF SOCIAL SECURITY,

        *Defendant*.

------------------------------------X

**MEMORANDUM AND ORDER**

21-CV-1793 (KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

Plaintiff Emmy Han Hsieh ("Plaintiff") appeals the final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") finding her not disabled within the meaning of the Social Security Act (the "Act") and not entitled to disability insurance benefits under Title II of the Act. Plaintiff and the Commissioner have cross-moved for judgment on the pleadings. For the reasons herein, Plaintiff's motion is **GRANTED**, the Commissioner's cross-motion is **DENIED**, and the case is **REMANDED** for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

The parties have filed a joint stipulation of relevant facts, which the court has reviewed and incorporates by reference. (*See generally* ECF No. 24, Joint Stipulation of Facts ("Stip.").)

1

## I.   Factual and Procedural Background

Plaintiff has been diagnosed with generalized anxiety disorder and major depressive disorder. (ECF No. 18, Administrative Transcript ("Tr.") at 1187-88.) Plaintiff's symptoms have varied over time, but have included, according to her healthcare provider: impaired concentration, poor appetite, high anxiety, abdominal pain, difficulty sleeping, hypervigilance, and a depressed mood. (*Id.* at 668, 704.) During a hearing before the Social Security Administration ("SSA"), Plaintiff stated that she rarely leaves the house, she has trouble with her memory, she has feelings of paranoia, she sleeps only a "little bit" at night, and she has difficulty going to the store or taking public transportation without her daughter accompanying her. (*Id.* at 80-83.)

Plaintiff has received mental health treatment through the Charles B. Wang Community Health Center in Flushing, New York, since April 2014. (*Id.* at 1186.) Plaintiff was referred for psychiatric treatment by her primary care provider, and was seen by psychiatrist Jianping Chen, M.D., on April 25, 2014, who diagnosed her with general anxiety disorder and major depressive disorder. (*Id.* at 1186-88.) Plaintiff subsequently saw Dr. Chen regularly from April 2014 through at least June 2019, with monthly visits for medication management. (*Id.* at 17, 65.) Plaintiff has also had less consistent psychotherapy sessions with Sook Yee

Yeung, LCSW, (*id. at* 973-974, 988-989, 1009-1010, 1034-1036, 1044-1046, 1060-1061, 1097-1098, 1114-1115, 1124-1126, 1143), and with Wai Sze Sarah Yip, LMSW, (*id.* at 894, 859), during the same time period as Plaintiff was treated by Dr. Chen.

Prior to filing for disability, Plaintiff previously worked as a salesperson at various retail establishments between 1997 to 2002, and between 2003 to 2012. (*Id.* at 313.)  On January 5, 2017, Plaintiff filed an application for disability insurance benefits, alleging disability since February 1, 2013.  (Tr. at 111, 202.) Plaintiff claimed that she was disabled due to abdominal pain and depression.  (*Id.* at 116.)

In connection with her disability insurance benefits application, Plaintiff met with a consultative examiner.  On March 22, 2017, Plaintiff was examined by Dr. Lyudmila Trimba, an internal medicine specialist, who determined that Plaintiff's alleged physical impairments did not cause any work-related restrictions. (*Id.* at 533-36.)  A non-examining state agency psychiatric consultant, Dr. E. Gagan, also evaluated Plaintiff's mental impairments based on a March 27, 2017, review of the record, and concluded that Plaintiff maintained the mental residual functional capacity to understand, remember, and carry out simple instructions; maintain reasonable attention, concentration, and pace; and interact and adapt to a low-stress work setting requiring simple tasks.  (*Id.* at 92-96.)  Non-examining state agency

3

psychological consultant Larry Kravitz, Psy.D., also evaluated Ms. Hsieh's mental impairments based on a review of the record on April 12, 2017. (*Id.* at 102.) Dr. Kravitz agreed with Dr. Gagan's assessment that Ms. Hsieh was mentally capable of simple, routine work tasks. (*Id.*)

Plaintiff's claim for disability insurance benefits was initially denied on May 2, 2017. (*Id.* at 112.) Plaintiff then filed a written request for a hearing before an administrative law judge. (*Id.* at 118.) Plaintiff subsequently met with her treating psychiatrist, Dr. Chen, who completed a psychiatric/psychological impairment questionnaire summarizing Plaintiff's conditions on December 22, 2018. (*Id.* at 567.) Dr. Chen opined that Plaintiff had "marked" and "moderate-to-marked" limitations in her ability to perform several mental activities due to her mental impairments. (*Id.* at 570.) Additionally, Dr. Chen estimated that Plaintiff would likely be absent from work more than three times per month due to her impairments. (*Id.* at 571.)

On May 31, 2019, Plaintiff appeared with her attorney Patrick Bussey for a video hearing before Administrative Law Judge Scott Johnson (the "ALJ"). (*Id.* at 74.) During the hearing, vocational expert Janice Hastert testified. (*Id.* at 84.) By decision dated June 17, 2019, the ALJ determined that Plaintiff was not disabled within the meaning of the Act from February 1, 2013, her alleged onset date, through the last date she was insured for benefits,

4

which was December 31, 2017 (the "date last insured").  (*Id.* at 22.)

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a "full range of work at all exertional levels" so long as the following limitations were met: "[s]he was able to carry out detailed but uninvolved instructions in the performance of simple, routine, and repetitive tasks; in a work environment free of fast paced production requirements; involving only simple, work-related decisions; with few, if any, work place changes . . . [and with] occasional interaction with the public as well as frequent interaction with co-workers and supervisors." (*Id.* at 16.)  Considering Plaintiff's "age, education, work experience, and [RFC]," the ALJ found that "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed" and as such, Plaintiff was "not under a disability . . . from February 1, 2013, the alleged onset date, through December 31, 2017, the date last insured." (*Id.* at 21.)  In crafting his RFC, the ALJ considered the opinion evidence of Plaintiff's treating physician, Dr. Chen, which the ALJ gave "little weight," alongside state agency psychological consultant Larry Kravitz, Psy.D., which the ALJ gave "significant weight." (*Id.* at 19-20.)

Plaintiff appealed the ALJ's decision to the Appeals Council on July 12, 2019.  (*Id.* at 39.)  On July 23, 2020, the Appeals

5

Council denied review of the ALJ's decision, rendering it the final decision of the Commissioner. (*Id.* at 1.) Plaintiff initiated the instant action on April 2, 2021, after being granted additional time to file by the Appeals Council on March 5, 2021. (ECF No. 1, Complaint.)

## II. The ALJ's Decision

Pursuant to the SSA regulations, an ALJ follows a five-step process for evaluating disability claims, which has been summarized as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits h[er] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider h[er] [*per se*] disabled.... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform h[er] past work. Finally, if the claimant is unable to perform h[er] past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1179–80 (2d Cir. 1998)). "The applicant bears the burden of proof in the first four steps of the sequential inquiry; the Commissioner bears the burden in the last." *Id.* To determine the claimant's residual functional

capacity ("RFC"), the ALJ must consider the claimant's "impairment(s), and any related symptoms, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

Here, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period between her alleged onset date of February 1, 2013, and her date last insured of December 31, 2017. (Tr. at 13.) At step two, the ALJ determined that Plaintiff suffered from the severe impairments of major depressive disorder and generalized anxiety disorder. (*Id.*) The ALJ found that Plaintiff's alleged physical impairments were not sufficiently severe as to satisfy the step two criteria. (*Id.*)

At step three, the ALJ determined that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. at 14.) Specifically, the ALJ found that Plaintiff's impairments did not meet the criteria of depressive, bipolar, and related disorders under Listing 12.04, and anxiety and obsessive-compulsive disorders under Listing 12.06. (*Id.* at 14-16.)

Regarding Plaintiff's mental impairments, the ALJ considered whether the "B" criteria of the aforementioned mental impairment

listings were satisfied. (*Id.*) To satisfy the "B" criteria, Plaintiff's mental impairments must result in at least one "extreme" or two "marked" limitations in the following areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (*Id.* at 14-15.) Based on his review of the record, the ALJ determined that Plaintiff had a moderate limitation in each of the four areas of mental functioning. (*Id.* at 15-16.)

As discussed *supra,* the ALJ next determined the Plaintiff's RFC as follows:

> [T]he claimant ha[s] the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. She [is] able to carry out detailed but uninvolved instructions in the performance of simple, routine, and repetitive tasks; in a work environment free of fast paced production requirements; involving only simple, work-related decisions; with few, if any, work place changes. The claimant [can] tolerate occasional interaction with the public as well as frequent interaction with co-workers and supervisors.

(*Id.* at 16.) At step four, the ALJ found that, based on Plaintiff's RFC, she would be incapable of performing her past relevant work as a salesperson. (*Id.* at 20.) Finally, at step five, the ALJ found that, based on Plaintiff's RFC and the vocational expert's testimony, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as tumbler operator, casting machine tender, and riveting machine operator.

8

(*Id.* at 21.)  Accordingly, the ALJ found that plaintiff was not "disabled" and not entitled to disability benefits under the Act. (*Id.*)

## STANDARD OF REVIEW

To receive disability benefits, a claimant must be "disabled" within the meaning of the Act.  *See* 42 U.S.C. §§ 423(a), (d).  A claimant qualifies as disabled when she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *Id.* § 423(d)(1)(A).  The impairment must be of "such severity" that the claimant is unable to do her previous work or "engage in any other kind of substantial gainful work."  42 U.S.C. § 423(d)(2)(A). "The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'"  *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (alterations in original)).

An unsuccessful claimant for disability benefits under the Act may bring an action in federal court seeking judicial review

of the Commissioner's denial of his or her benefits.   42 U.S.C. § 405(g).   In reviewing a final decision of the Commissioner, the reviewing court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).   "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (internal quotation marks omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).   In determining whether the Commissioner's findings were based on substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.*   However, "it is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).   If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld.   42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013) (*per curiam*).

     Federal law explicitly authorizes a court, when reviewing decisions of the SSA, to order further proceedings when

appropriate.   "The court shall have power to enter, upon the
pleadings and transcript of the record, a judgment affirming,
modifying, or reversing the decision of the Commissioner of Social
Security, with or without remanding the cause for a rehearing."
42 U.S.C. § 405(g).  Remand is warranted where "there are gaps in
the administrative record or the ALJ has applied an improper legal
standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999)
(quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (internal
quotation marks omitted).  Remand is particularly appropriate
where further findings or explanation will clarify the rationale
for the ALJ's decision.  *Pratts*, 94 F.3d at 39.  However, if the
record before the court provides "persuasive proof of disability
and a remand for further evidentiary proceedings would serve no
purpose," the court may reverse and remand solely for the
calculation and payment of benefits. *See, e.g.*, *Parker v. Harris*,
626 F.2d 225, 235 (2d Cir. 1980); *Kane v. Astrue*, 942 F Supp. 2d
301, 314 (E.D.N.Y. 2013).

## Discussion

On appeal, Plaintiff asserts that the ALJ: (1) improperly
evaluated medical opinion evidence, resulting in an erroneous
determination of Plaintiff's RFC, and (2) improperly evaluated
Plaintiff's subjective statements.  (ECF No. 20, Plaintiff's
Memorandum of Law ("Pl. Mem."), at 1, 7.)  For the reasons
discussed below, the Court grants Plaintiff's motion and remands

11

to the SSA because the ALJ erred by: (1) failing to adequately develop the record, and (2) providing an RFC that was not supported by substantial evidence.  On remand, the ALJ should further explain why the treating psychiatrist's opinion was not given controlling weight, and further explain his credibility determinations, including his reliance on Plaintiff's evidence of daily living and delay in seeking care.  *Lebby v. Comm'r of Soc. Sec.*, No. 20-cv-4760 (PKC), 2022 WL 580983, at *4 (E.D.N.Y. Feb. 24, 2022) ("on remand, the ALJ should further explain his credibility determinations, including his reliance on evidence of daily functioning and Plaintiff's 'conservative' treatment").

## I.   Failure to Develop the Record

"Whether the ALJ has met his duty to develop the record is a threshold question that must be determined before the Court reviews whether the ALJ's final decision is supported by substantial evidence."  *Miranda v. Comm'r of Soc. Sec.*, No. 22-cv-4226 (PKC), 2023 WL 6385727, at *6 (E.D.N.Y. Sept. 29, 2023) (internal quotation marks and citation omitted).  Even when not raised by the claimant, the Court "must independently consider the question of whether the ALJ failed to satisfy his duty to develop the Record."  *Sanchez v. Saul*, No. 18-cv-12102 (PGG) (DF), 2020 WL 2951884, at *23 (S.D.N.Y. Jan. 13, 2020), *report and recommendation adopted sub nom. Sanchez v. Comm'r of Soc. Sec.*, 2020 WL 1330215 (S.D.N.Y. Mar. 23, 2020).  "[B]ecause a hearing on disability

benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citations omitted).  "Legal errors regarding the duty to develop the record warrant remand."  *Wilson v. Colvin*, 107 F. Supp. 3d 387, 407 (S.D.N.Y. 2015) (collecting cases).

In the instant case, the weight the ALJ assigned to the different medical opinions regarding Plaintiff's mental impairments indicates that the ALJ should have further developed the record.  Though the ALJ considered the opinions of Dr. Chen, Plaintiff's psychiatrist, and Dr. Kravitz, a non-examining expert, the ALJ found that only Dr. Kravitz's opinion was persuasive and somewhat consistent with the RFC.  The Commissioner contends that although "[t]he ALJ referred by name only to Dr. Kravitz, who affirmed Dr. Gagan's findings, [the ALJ] discussed the findings of Dr. Gagan as well."  (ECF No. 22, Defendant's Memorandum of Law, at 16.)

Dr. Chen, Plaintiff's treating psychiatrist for approximately five years, provided a medical opinion dated December 22, 2018, concluding that Plaintiff's mental impairments significantly impacted her ability to work.  (Tr. at 567.)  Dr. Chen concluded that Plaintiff had "marked" limitations in several areas, including her abilities to (1) understand, remember and carry out detailed instructions; (2) maintain attention and concentration

13

for extended periods; (3) perform activities within a schedule and consistently be punctual; (4) work in coordination with or near others without being distracted by them; (5) complete a workday without interruptions from psychological symptoms; (6) perform at a consistent pace without rest periods of unreasonable length or frequency; and (7) interact appropriately with the public. (*Id.* at 570.) The medical opinion also noted that Plaintiff had several "moderate-to-marked" limitations, including with her abilities to (1) remember locations and work-like procedures; (2) understand and remember one-to-two step instructions; (3) sustain ordinary routine without supervision; (4) accept instructions and respond appropriately to criticism from supervisors; (5) get along with coworkers or peers without distracting them; (6) maintain socially appropriate behavior; and (7) make plans independently. (*Id.*)

Based on the treating relationship, Dr. Chen provided a list of symptoms to support his assessment, including depressed mood, persistent or generalized anxiety, constricted and/or labile affect, feelings of guilt or worthlessness, difficulty thinking or concentrating, easy distractibility, poor immediate and recent memory, intrusive recollections of a traumatic experience, recurrent panic attacks, anhedonia/pervasive loss of interests, appetite disturbances/weight change, decreased energy, psychomotor retardation, social withdrawal or isolation, and poor sleep even with medication. (*Id.* at 568.) Finally, Dr. Chen noted that

14

Plaintiff was likely to miss work more than three times per month due to her mental impairments and treatment. (*Id.* at 571.)   The ALJ determined, however, that Dr. Chen's opinion was not persuasive because "Dr. Chen's treatment notes directly contradict this report as the claimant is regularly noted to have congruent or normal affect, with normal memory/concentration, and no evidence of constricted affect and no evidence of labile affect since 2014 . . . [a]dditionaly, there is no evidence of any posttraumatic stress disorder diagnosis and very little mention of past trauma." (*Id.* at 19.)   The ALJ also noted that Dr. Chen's opinion statement "was completed one year after the [Plaintiff's] date last insured." (*Id.*)

After determining that Plaintiff's treating physician's medical opinion was not persuasive due to inconsistencies and a lack of support in the medical record, the ALJ determined that non-examining expert Dr. Kravitz was the only persuasive opinion regarding Plaintiff's mental impairments.   (*Id.*)   As discussed above, Dr. Kravitz did not personally evaluate Plaintiff, but appears to have had access to at least some of her medical records as well as Plaintiff's daily activities report.   (*Id.* at 102.) Dr. Kravitz does not directly reference Dr. Gagan's review of the record, but generally concurred with Dr. Gagan's findings.   (*Id.*) Dr. Kravitz opined that "[w]hile the file evidence does suggest a reduction in functioning, claimant's report of functional

15

limitations appears more severe than would be supported based on the mental status findings . . . [the state agency] finding that claimant is capable of simple, routine work tasks mentally is reasonable." (*Id.*)

A review of the ALJ's discussion of Dr. Kravitz's opinion makes it clear that the ALJ erroneously confused the opinions of Dr. Kravitz and Dr. Gagan.  While the ALJ states that "[Dr.] Kravitz, Psy.D. reviewed the medical evidence of record and opined the [Plaintiff] would have mild limitation in ability to understand, remember, or apply information," Dr. Kravitz in fact made no such finding. (*Id.* at 19.)  Instead, it was Dr. Gagan who made the finding that the ALJ is referencing, as part of his evaluation of the "Paragraph B" criteria for the listings that might apply to Plaintiff, and not Dr. Gagan's Mental Residual Functional Capacity ("MRFC") Assessment, which was more detailed. (*Id.* at 104-07.)  The ALJ continues by noting the moderate limitations included in Dr. Gagan's MRFC for Plaintiff, again attributing them to Dr. Kravitz erroneously.  (*Id.* at 19.)

The ALJ subsequently states that "State agency psychological consultant concluded [Plaintiff] could understand, remember and carry out simple instructions; maintain reasonable attention/ concentration/ pace; interact; and adapt to low stress work setting requiring simple tasks." (*Id.*)  Again, the ALJ appears to be confusing the medical opinion of Dr. Gagan (specifically the

16

"Additional Explanation" section of the MRFC), and that of Dr. Kravitz, which included no such statement. (*Id.* at 102, 107.) The ALJ concludes by stating that "Dr. Kravitz'[s] opinion accurately reflects the objective medical evidence (particularly the treatment evidence from the claimant psychiatrist, Dr. Chen), and is therefore given significant weight." (*Id.* at 19-20.)

The ALJ's evaluation of the medical opinions that were before him suggests a need to further develop the record in light of the "inconsistency" and "lack of support" the ALJ found in the medical opinion of the only examining expert. Because the ALJ deemed the treating physicians' opinion lacking in support, he should have sought clarification regarding the perceived deficiencies, including the fact that the opinion was rendered after the date last insured. *See Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 428 (S.D.N.Y. 2010) ("[I]f a physician's report is believed to be insufficiently explained, lacking in support, or inconsistent with the physician's other reports, the ALJ must seek clarification and additional information from the physician, as needed, to fill any clear gaps before rejecting the doctor's opinion.").

First, the ALJ cites the lack of evidence of certain symptoms and diagnoses in the medical record, specifically post-traumatic stress disorder, as support for giving little weight to Dr. Chen's opinion. (Tr. at 19.) However, the ALJ made no finding, and the

17

Commissioner has made no argument, regarding "why Dr. [Chen] could not have resolved at least some of the inconsistencies at issue, the only circumstance in which the [Social Security] regulations explicitly provide that re-contacting the treating physician is inappropriate." *Burke v. Comm'r of Soc. Sec.*, No. 16-cv-6520 (KMK), 2017 WL 6029166, at *3 (S.D.N.Y. Dec. 5, 2017). Here, the ALJ should have sought additional evidence concerning Dr. Chen's opinion assessment that Plaintiff exhibits "recurrent panic attacks with intrusive recollections of traumatic experience." (Tr. at 19.) Given the "heightened duty to develop the record in cases of mental impairment," the ALJ had an obligation to recontact Dr. Chen to seek clarifying information. *Burke,* 2017 WL 6029166 at *4 (collecting cases). On remand, the ALJ is encouraged to seek further documentation to reconcile the minimal mentions of past trauma in Dr. Chen's treatment notes with his opinion assessment of Plaintiff's trauma-related anxiety.

Second, the ALJ infers from Plaintiff's treatment regimen which "has required no inpatient hospitalization" that Plaintiff's condition is stable. (Tr. at 19.) However, Plaintiff testified during the May 31, 2019, hearing that she had previously been hospitalized due to her depression. (*Id.* at 81.) The ALJ does not address Plaintiff's alleged hospitalization in his opinion, nor does the medical record include any documentation relating to this hospitalization. (*See generally id.*) On remand, the ALJ

18

should also seek clarification on the discrepancy between Plaintiff's testimony on this matter and the rest of the record.

The importance of the need to develop the record is heightened in light of the fact that the ALJ appears to have mixed up the opinions of Dr. Kravitz and Dr. Gagan and may have excluded otherwise relevant medical opinion evidence as a result. Given the gap in the record that followed the lack of weight assigned by the ALJ to Dr. Chen's medical opinion evidence, the ALJ should have further developed the record. *See Lebby v. Comm'r of Soc. Sec.*, No. 20-cv-4760 (PKC), 2022 WL 580983, at *4 (E.D.N.Y. Feb. 24, 2022) ("the fact that all examining experts were deemed unpersuasive created an obvious gap in the record that required further development"). Accordingly, the Court finds that the ALJ failed to adequately develop the record, and Plaintiff's claim must be remanded for further proceedings.

## II. The ALJ's Mental RFC Finding was not Supported by Substantial Evidence

Although a failure to develop the record alone would warrant remand, the Court also finds that the ALJ's mental RFC finding is not supported by substantial evidence. "Medical records alone cannot provide substantial evidence for an RFC determination; rather, an ALJ's RFC determination must be supported by a medical opinion and that opinion must have been in the record at that

19

time." *Lebby,* 2022 WL 580983, at *7 (internal quotation marks and citation omitted).

### a. The ALJ's Weighing of Medical Opinion Evidence

First, Plaintiff contends, and the Court agrees, that the ALJ's evaluation of the medical opinion evidence, including Dr. Chen's opinion, was not consistent with the Commissioner's regulations. (Pl. Mem. at 2.)  Under the treating physician rule, the opinion of a claimant's treating physician as to "the nature and severity of the [claimant's] impairment is given 'controlling weight' if the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (citing *Burgess*, 537 F.3d at 128; 20 C.F.R. § 404.1527(c)(2)).[1]  An ALJ who does not accord controlling weight to a treating physician's medical opinion must explicitly consider the following non-exclusive *Burgess* factors in determining how much weight to give to the opinion: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a

---

[1] In 2017, new regulations were issued that changed the standard for evaluating medical opinion evidence for claims filed on or after March 27, 2017.  *See* 20 C.F.R. § 404.1520c.  However, because Plaintiff filed her claims on January 5, 2017, the old regulations, including the treating physician rule, still apply.

specialist. *Estrella v. Berryhill*, 925 F.3d 90, 95–96 (2d Cir. 2019) (citation omitted); *see also* 20 C.F.R. § 404.1527(c)(2). "The ALJ must then 'comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.'" *Cichocki v. Astrue*, 534 F. App'x. 71, 75 (2d Cir. 2013) (citing *Burgess*, 537 F.3d at 129). Though the decision regarding a disability determination is reserved to the Commissioner, "when an ALJ discounts a treating physician's opinion that a claimant is disabled, the ALJ is obligated to give good reasons for doing so." *Quiles v. Saul*, 19-cv-11181 (KNF), 2021 WL 848197, at *9 (S.D.N.Y. Mar. 5, 2021) (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, "[t]he failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

The ALJ gave "little weight" to Dr. Chen's December 2018 opinion that Plaintiff "displays deficits in memory and concentration, as well as psychomotor retardation, anhedonia, appetite disturbance, and social isolation, along with labile and constricted affect with depressed mood and recurrent panic attacks with intrusive recollections of traumatic experience." (Tr. at 19.) The ALJ recognized Dr. Chen as Plaintiff's treating psychiatrist and acknowledged the length of their treatment relationship. (*Id.* at 17.) However, the ALJ primarily focused on

21

*Burgess* factors two and three, basing his assignment of weight for Dr. Chen's opinion on the lack of support in the medical evidence of the record and internal inconsistencies in Dr. Chen's own treatment notes.  (*Id.* at 19.)

After carefully examining the record, the Court determines that the ALJ failed to properly apply the treating physician rule in assigning "little weight" to Dr. Chen's opinion.  First, the ALJ relied heavily on three periods of treatment in which Dr. Chen's (or a social worker's) notes indicate Plaintiff was "relatively stable" and "compliant with her medications." (*Id.* at 17-18; *see also id.* at 353, 364, 370, 388, 390, 394, 404, 464.) These isolated periods are not characteristic of the record generally, which indicates Plaintiff remained anxious, depressed and/or tense at nearly every other appointment with Dr. Chen.  (*Id.* at 322, 325, 329, 332, 334, 339, 345, 358, 366, 380, 390, 391, 395, 401, 417, 422, 428, 437, 438, 472, 476, 483, 491, 493, 496, 500, 502, 504, 505.)  Here, the ALJ incorrectly "imposed his own notion" and medical judgment over that of the treating psychiatrist's opinions by finding that the severity of Plaintiff's alleged mental impairments were contradicted by a few treatment notes showing that Plaintiff was "relatively stable," improved, feeling better, and compliant with her medications.  *Shaw v. Carter*, 221 F.3d 126, 134-35 (2d Cir. 2000); *see also Jacobs v. Saul*, 482 F. Supp. 3d 23, 27 (E.D.N.Y. 2020) ("The ALJ is not

permitted to cherry pick from the treatment record only evidence that is inconsistent with the treating source's opinion in order to conclude that the opinion should be accorded less weight."). The Second Circuit has previously indicated that it is especially important to give weight to treating physicians regarding mental health opinions because records of mental health diagnoses may be less clear than actual consultations. *Flynn v. Comm'r of Soc. Sec. Admin.*, 729 F. App'x 119, 122 (2d Cir. 2018) ("The treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as x-rays or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations.").

The characterization of the incidences where Plaintiff was found to be "relatively stable" as indicative of Plaintiff's improvement or recovery is further diminished by the frequency of Plaintiff's examinations with Dr. Chen, which occurred every other month on average and sometimes multiple times per month. (*Id.* at 318-530.)  The ALJ's failure to explicitly consider the frequency of these examinations is yet another procedural error and grounds for remand in the absence of other "good reasons" for the weight assigned to the opinion. *See Estrella*, 925 F.3d at 96 ("An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning

weight [to a treating physician's opinion] is a procedural error.")
(*citing Selian v. Astrue*, 708 F.3d 409, 419-20 (2d Cir. 2013)).

Instead of assigning controlling weight to Plaintiff's
treating physician's medical opinion, the ALJ instead chose to
accord "significant weight" to the opinion of Dr. Kravitz, a non-
examining expert. (Tr. at 19-20.) As discussed further *supra*,
the ALJ appears to have mixed up the opinions of Dr. Kravitz and
Dr. Gagan, and instead refers to Dr. Gagan's MRFC findings. Dr.
Gagan opined "the [Plaintiff] could understand, remember and carry
out simple instructions; maintain reasonable attention/
concentration/ pace; interact; and adapt to low stress work setting
requiring simple tasks," an MRFC which the ALJ adopted in large
part. (*Id.* at 19, 107.) However, the ALJ also stated, without
explanation, that he was adding "moderate limitations in
information, adaptation, and social interaction" to give the
Plaintiff "the benefit of the doubt." (*Id.* at 20.)

The Second Circuit has cautioned that "ALJs should not rely
heavily on the findings of consultative physicians after a single
examination," let alone a simple review of the medical record.
*Selian*, 708 F.3d at 419. Where a plaintiff's medical sources have
differing RFC opinions, "an ALJ's failure to reconcile such
materially divergent RFC opinions of medical sources is a ground
for remand." *Diaz v. Comm'r of Soc. Sec.*, No. 21-cv-1609 (KAM),
2022 WL 16715920, at *9 (E.D.N.Y. Nov. 4, 2022) (citation omitted).

This is especially true where the ALJ discounts the opinion of the treating physician. *See Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009) (summary order) ("Where an ALJ fails properly to acknowledge [the treating physician rule] or to provide 'good reasons' for the weight given to the treating physician's opinion, we do not hesitate to remand." (citation omitted)).

### b. Failure to Evaluate all Medical Opinions

Second, the ALJ also appears to have neglected to evaluate the medical opinion of Dr. Kravitz, and instead seems to have conflated it with the opinion of Dr. Gagan, as discussed *supra*. (*Id.* at 19.)   SSA regulations require the ALJ to evaluate *every* medical opinion he receives, and it is not clear that the ALJ did so in this instance.   *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Though the ALJ mentions Dr. Kravitz's opinion, he references only the MRFC crafted by Dr. Gagan in his discussion of Dr. Kravitz's opinion.  (*Id.* at 19, 105-107.)   Because the ALJ does not properly examine or evaluate the persuasiveness of the opinions of both Drs. Gagan and Kravitz, this case must also be remanded.   *Laware v. Colvin*, 290 F. Supp. 3d 182, 186 (W.D.N.Y. 2017) (although an ALJ "made brief reference" to a medical opinion, the ALJ "failed to explain the weight (if any) afforded to the opinion . . . [and therefore] the Court is unable to determine whether the ALJ duly considered all of the medical opinions of record.")

### c. Impermissible Substitution

Third, the ALJ appears to have based his RFC determination on what he viewed as Plaintiff's "very minimal" psychiatric care that shows "she is stable."  The ALJ's determination that Plaintiff's treatment as "very minimal" was an impermissible substitution of his opinion for that of medical experts. *Shaw v. Chater*, 221 F.3d 126, 134-35 (2d Cir. 2000) ("Neither the trial judge nor the ALJ is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion. Essentially, the ALJ and trial court imposed their notion that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered." (citations omitted)).  Even if the ALJ were correct in his classification of Plaintiff's treatment as "very minimal," which is not obviously correct, given the Plaintiff's history of psychotropic medication and psychiatric care over more than four years, such treatment does not constitute substantial evidence for the RFC. *Kirby v. Saul*, No. 20-cv-02270 (FB), 2021 WL 4197264, at *3 (E.D.N.Y. Sept. 15, 2021) ("[N]either [the plaintiff's] ability to perform personal tasks—like showering, getting dressed, and going to doctor's appointments—her 'conservative' treatment choices, nor her decision to return to work after a period of disability amounts to substantial evidence.").

In conclusion, the Court finds that the ALJ's RFC is not supported by substantial evidence because (1) it is not supported

by the Plaintiff's treating physician's medical opinion; (2) the ALJ failed to properly distinguish between or weigh the remaining two state agency examiner opinions; and (3) Plaintiff's "very minimal" psychiatric treatment cannot constitute substantial evidence.  As a result, remand is necessary in the instant case.

**III.  The ALJ's Evaluation of Plaintiff's Subjective Statements**

In addition to adequately developing the record in this case, on remand, the ALJ should further explain his credibility determinations regarding Plaintiff's subjective complaints.  In the instant case, the ALJ found that Plaintiff's:

> medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. at 17.)  If a plaintiff's allegations are not supported by "objective medical evidence, the ALJ must engage in a credibility inquiry." *Gallagher v. Colvin*, 243 F. Supp. 3d 299, 306 (E.D.N.Y. 2017) (citation and quotations omitted).

"In making a credibility determination, the ALJ must consider seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of claimant's pain and other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other

27

symptoms; (5) any treatment, other than medication, the claimant has received; (6) any other measures the claimant employs to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of pain or other symptoms." *Id.* at 306–07. Courts in this circuit have also noted that "the ALJ must consider all of the evidence in the record and give specific reasons for the weight accorded to the claimant's testimony." *Alcantara v. Astrue*, 667 F. Supp. 2d 262, 277 (S.D.N.Y. 2009) (citing *Lugo v. Apfel*, 20 F. Supp. 2d 662, 663 (S.D.N.Y. 1998)). "Where the ALJ fails sufficiently to explain a finding that the claimant's testimony was not entirely credible, remand is appropriate." *Garcia v. Kijakazi*, No. 22-cv-1620 (KAM), 2023 WL 6796394, at *6 (E.D.N.Y. Oct. 13, 2023).

The ALJ's finding that Plaintiff's allegations were not credible was based on several observations he discussed in his decision, including: (1) Plaintiff had alleged disabling conditions since 2012 but did not seek treatment until 2014, (2) Plaintiff's psychiatric care was "very minimal," (3) Plaintiff was engaged in activities such as shopping, driving, traveling by public transportation, and hobbies such as photography and knitting; and (4) her testimony lacked support in her medical records. (Tr. at 18-19.) In reaching his conclusion, the ALJ considered some, but not all, of the factors set forth in the Regulations. *See* 20 C.F.R. § 404.1529(c).

Looking at the second factor, the ALJ does not properly assess the duration and frequency of Plaintiff's pain. Specifically, the ALJ questions Plaintiff's claims as to the duration of her pain, citing Plaintiff's two-year delay from her alleged onset date in seeking treatment. (Tr. at 17.) However, "it is well-established in the Second Circuit that an ALJ may not discount a claimant's failure to seek treatment without first exploring the reasons why the claimant did not seek treatment, especially where the lack of treatment pertains to a plaintiff's mental impairments." *Sappah v. Colvin*, No. 15-cv-1090, 2017 WL 1194235, at *8 (N.D.N.Y. Mar. 30, 2017) (citing *Shaw v. Chater*, 221 F.3d 126, 133 (2d Cir. 2000)); *see also Hamilton v. Colvin*, 8 F. Supp. 3d 232, 244 (N.D.N.Y. 2013) ("The ALJ appears to have discounted Plaintiff's testimony regarding these limitations solely due to the lack of treatment . . . it was error for the ALJ to follow that course without considering and exploring Plaintiff's reason(s) for not seeking treatment.") Nowhere in the decision does the ALJ address potential reasons for Plaintiff's delay in seeking treatment, nor did the ALJ attempt to resolve this issue with the Plaintiff herself during the hearing. (*See generally* Tr. at 11-22, 71-88.)

The ALJ also neglected to consider the factors that precipitate and aggravate Plaintiff's symptoms, as well as measures other than treatment that Plaintiff uses to relieve pain, the third and sixth factors. On remand, the ALJ will have another

29

opportunity to thoroughly evaluate the credibility of Plaintiff's testimony with sufficient specificity.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is **GRANTED**, Defendant's cross-motion for judgment on the pleadings is **DENIED**, and the case is **REMANDED** for further proceedings consistent with this Memorandum and Order.

On remand, the ALJ shall:

(1) Further develop the record by seeking clarification from Plaintiff's treating physician regarding his medical opinion, and from Plaintiff regarding her alleged hospitalization

(2) Re-examine the opinions of plaintiff's treating physician, Dr. Jianping Chen, and the two state agency examiners, and provide sufficient explanations for the weight afforded to each opinion.

(3) Consider the factors outlined in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) in redetermining the credibility of plaintiff's statements regarding her symptoms and the effects of her impairments.

The Clerk of Court is respectfully directed to enter judgment remanding this case, and to close the case.

**SO ORDERED.**

DATED:      January 22, 2024
            Brooklyn, New York

_____
**HON. KIYO A. MATSUMOTO**
United States District Judge